UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MELVIN J. HOWARD,

        Plaintiff,

    v.

MAXIMUS, INC., d/b/a/ MAXIUMS, CANADA INC., d/b/a/ Themis Program Management & Consulting Ltd.; STEVE KITCHER, in his individual capacity; and JOANNE PLATT, in her individual capacity,

        Defendants.

Case No. 3:13-cv-01111-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Melvin J. Howard ("Howard"), appearing *pro se*, has filed a Complaint against defendant Maximus, Inc. ("Maximus") and two individuals, Steve Kitcher ("Kitcher") and Joanne Platt ("Platt"), neither of whom have yet been served. Howard alleges claims under 42 USC § 1983 for various violations of his civil rights, a claim for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC § 1962 *et seq* ("RICO"), and a claim to pierce the corporate veil.

Maximus has filed a Motion to Dismiss Pursuant to FRCP 12(b)(1), (b)(6), and (b)(7) (docket # 20) for lack of subject matter jurisdiction, failure to state a claim, and failure to join

1 – FINDINGS AND RECOMMENDATION

required parties. For the reasons set forth below, that motion should be granted, and this case should be dismissed with prejudice.

## ALLEGATIONS

All of Howard's claims arise out of conduct occurring while he was in Canada, including expropriation of medical equipment, illegal confiscation of his United States passport, arrest and imprisonment without probable cause, failure to treat his medical needs, and other abuses of authority.

Maximus, a Virginia corporation, operates government-sponsored programs in the United States, Australia, Canada, the United Kingdom, and Saudi Arabia. Complaint, ¶¶ 2, 22. In Canada, it acquired Themis Program Management & Consulting, Ltd. ("Themis") which manages and conducts the Province of British Columbia's Family Maintenance Enforcement Program ("FMEP") through the Ministry of Attorney General. *Id*, ¶ 3. Maximus also contracts with the Province of British Columbia to provide management and administration services for both its drug benefit program (PharmaCare) and medical insurance program (Medical Services Plan). *Id.*

The caption also lists "Maxiums [*sic*], Canada Inc.," as a "dba" for Maximus, but that entity is not otherwise accused in the Complaint of any illegal conduct. According to Maximus, Maximus Canada, Inc., is a Canadian Federal corporation and its wholly owned subsidiary. Francis Decl., ¶ 3. Themis, a British Columbia corporation, is a wholly owned subsidiary of GAEA Management, Inc., which in turn is a wholly owned subsidiary of Maximus Canada, Inc. *Id*, ¶¶ 4-5.

The FMEP has a unit comprised of lawyers employed by the British Columbia Attorney General's FMEP and by Themis. *Id*, ¶ 5. Kitcher was the enforcement officer for the Director of

FMEP, as well as Chairman of British Columbia's public sector union. *Id*, ¶¶ 6, 7. Platt also works for FMEP. *Id*, ¶ 6. Howard alleges that both Kitcher and Platt acted as "an employee or agent of Maximus," presumably because they acted under the authority given to them through Themis's contract with British Columbia to carry out the functions of the FMEP.

The alleged facts underlying Howard's claims are sketchy and hard to piece together into a coherent narrative. His problems apparently started in 2003 when he first complained that the Canadian government had breached its obligations under NAFTA by expropriating his equipment for use in a diagnostic imaging facility. *Id*, ¶ 4. According to that NAFTA complaint, Canada provided better treatment to Canadian investors than to him. *Id*.

In 2009 while residing in Arizona, Howard wrote to the Department of Economic Security Administrative Review Unit of Arizona and expressed his views of prosecutorial misconduct by the FMEP and breach of its reciprocal agreement with Arizona. *Id*, ¶ 5. Sometime before 2012, the FMEP incarcerated Howard in Canada on three separate occasions while visiting his children. *Id*, ¶ 6. In 2012, apparently while in Canada, Howard called the FMEP and spoke with Kitcher, who reported FMEP's hold on a joint bank account that Howard used for the benefit of his children. *Id*. Kitcher also bragged about FMEP compelling Howard to surrender his passport, which Platt later confirmed. *Id*. The confiscation of his passport was an alleged attempt by British Columbia and Maximus to block Howard's travel to The Hague in Holland where the international tribunal was to hold a hearing on his NAFTA case. *Id*, ¶ 7.

Howard claims that Kitcher and Platt used force and fraud to wrongfully incarcerate him in Canada and to illegally remove his passport for political and malicious reasons in order to benefit Maximus by interfering with Howard's NAFTA proceedings. *Id*, ¶¶ 9, 11, 13, 20. In addition, while incarcerated, Howard alleges that he was denied adequate medical care. *Id*, ¶ 17.

3 – FINDINGS AND RECOMMENDATION

He blames his mistreatment on Maximus not properly supervising its subordinates in Canada and creating a corporate structure to shelter its wrongdoings from judicial or administrative oversight. *Id*, ¶¶ 22, 27.

Although not alleged in the Complaint, Howard's response to Maximus's motion fills in some of the factual gaps. His NAFTA dispute with Canada was to redress discriminatory treatment involved with proposing to build the largest private surgical facility in Canada. Plaintiff's Opposition to Defendant's Motion to Dismiss (docket #25), p. 4 ("Plaintiff's Opposition"). Allegedly based on its control of the Canadian health care system through corruption, misconduct, and fraud, Maximus's "Canadian arm illegally held [him] hostage for five years in Canada on a non-criminal matter using his children as pawns in [his] international trade dispute." *Id*, p. 5. Howard sought and was granted relief in the British Columbia Supreme Court in 2012 to return with his children to the United States based, at least in part, on a pattern of misconduct and conflict of interest by Maximus's Canadian subsidiary. *Id*. As a result of the actions by Maximus's employees, agents, and subsidiaries, Howard has lost his property, business, and charitable organization. *Id*, p. 6.

## FINDINGS

### I.   § 1983 Claims

To state a claim under § 1983, a plaintiff must allege that the defendant deprived him of his Constitutional rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 USC § 1983. By alleging that defendants acted under color of Canadian law and not under the law of a state or territory of the United States, Maximus argues that Howard's § 1983 claims fail for lack of subject matter

jurisdiction under FRCP 12(b)(1) and also fail to allege facts sufficient to state a claim for relief under FRCP 12(b)(6).

The language of § 1983 does not explicitly state that "any State or Territory" is limited to a state or territory of the United States. In interpreting a statute, the starting point is the text itself. "Whether the meaning of a statute is plain 'is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.'" *United States v. Ermoian*, 727 F3d 894, 898 (2013), quoting *Robinson v. Shell Oil Co.*, 519 US 337, 341 (1997). The text of § 1983 makes no mention of foreign governments or foreign political subdivisions. Instead, it specifically mentions the District of Columbia, a domestic political subdivision. Thus, the terms "State" and "Territory" must be read in relation to the District of Columbia. In that context, it is clear that those terms were used to define domestic states and domestic territories, not foreign ones.

Moreover, as recently held by the Supreme Court, statutes do not apply to extraterritorial conduct absent an explicit statement from Congress to the contrary. *Kiobel v. Royal Dutch Petroleum Co.*, __US__, 133 S Ct 1659, 1669 (2013) (holding that the Alien Tort Statute does not apply to conduct occurring outside of the United States); *Morrison v. Nat'l Austl. Bank, Ltd.*, 561 US 247, __, 130 S Ct 2869, 2883 (2010) (holding that § 10-b of the Securities and Exchange Act of 1934 does not apply to extraterritorial conduct when the security is bought or sold on a foreign market). Congress has made no statement that § 1983 applies to extraterritorial conduct. To the contrary, Congress passed § 1983 in its original form shortly after the Civil War to enforce § 1 of the Fourteenth Amendment. *See Will v. Mich. Dep't of State Police*, 491 US 58, 66 (1989) (describing § 1 of the Civil Rights Act of 1871 as the "precursor" to § 1983). Its purpose was to provide individuals with a private cause of action against state actors for

5 – FINDINGS AND RECOMMENDATION

violating their federal civil rights. *Id*. Thus, § 1983 must be interpreted to exclude conduct "under color of" the law of any state or territory of the United States and not foreign law.

Howard alleges that he was arrested, maliciously prosecuted, and not given proper medical care in jail because of actions taken by Platt and Kitcher under the color of "their office as Counsel for the Director of Maintenance Enforcement and Enforcement Officer of British Columbia Canada." Complaint, ¶ 9. He does not allege that any defendant was acting under the color of law of any state law, nor could he because this matter related to child-support enforcement in Canada.

In response, Howard argues that the "abuse of authority and misconduct could have not been possible but by only through Maximus's Inc. a U.S. corporation who was granted authority under the color of both U.S. and Canadian law to act as judge, jury and executioner." Plaintiff's Opposition, p. 5. This assertion is not supported by any facts alleged in the Complaint. Instead, the Complaint alleges that Howard was detained in Canada through the conduct of Kitcher and Platt, acting under the authority given to them through Themis's contract with British Columbia to carry out functions of the FMEP. Neither the United States government nor any state government plays a role in enforcing a Canadian order for child support against a person in Canada.

The fact that Maximus is a government contractor in the United States does not change the analysis. The specific action that allegedly violates a plaintiff's rights must be taken under the color of state law such that the individual or corporate effectively becomes a "state actor." *See George v. Pacific-CSC Work Furlough*, 91 F3d 1227, 1230-31 (9th Cir 1996) (a private prison would be considered a state actor in relationship to inmates but not a state actor in relationship to prison employees because being an employer is not a traditional governmental

function).   Given that a Canadian court ultimately adjudicated the matter, the conduct at issue occurred under the color of Canadian law, not under the color of any state's law as required to state a claim under § 1983.

Because the alleged wrongdoers were acting under their authority as agents of the government of British Columbia, there was no American state actor as required by § 1983. "Acting under color of state law is a 'jurisdictional requisite for a § 1983 action.'" *West v. Atkins*, 487 US 42, 46 (1988).  Thus, the § 1983 claims should be dismissed for lack of jurisdiction.

**II.     Failure to State a Claim**

Maximus also seeks dismissal under FRCP 12(b)(6) of all claims for failure to state a claim upon which relief can be granted.  In order to survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations which, when accepted as true, give rise to a plausible inference that defendants violated plaintiff's rights.  *Ashcroft v. Iqbal*, 556 US 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 US 554, 556-57 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995).  Courts must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F3d 338, 341 (9th Cir 2010).

///

///

7 – FINDINGS AND RECOMMENDATION

A.     **§ 1983 Claims**

Because the § 1983 claims should be dismissed for lack of jurisdiction, the court need not address whether the Complaint also fails to allege sufficient facts to state a violation of § 1983.

B.     **RICO**

To state a claim under RICO, a plaintiff must allege that the defendant: (1) through the commission of two or more actions constituting a pattern of racketeering activity; (2) directly or indirectly invested in, maintained an interest in, or participated in an enterprise; (3) the activities of which affected interstate or foreign commerce.  18 USC §§ 1961(5), 1962(b).  Even if the RICO claim sufficiently alleges all of these elements, it nonetheless fails because it is premised on extraterritorial racketeering activity.

RICO applies only to a pattern of racketeering activity that occurs in the United States.  *United States v. Chao Fan Xu*, 706 F3d 965, 975-77 (9th Cir 2013).  Extraterritorial application of RICO does not focus on the geographic location of the defendant's enterprise, its planning or preparation, but instead focuses on where the pattern of racketeering activity occurred.  In *Chao Fan Xu*, the Ninth Circuit held that RICO did not apply to the defendants' embezzlement of money in China that eventually made its way to the United States, but did apply to their immigration fraud that occurred in the United States.  "Defendants' pattern of racketeering activity may have been conceived and planned overseas, but it was executed and perpetuated in the United States."  *Id* at 979.

Applying *Chao Fan Xu*, RICO does not reach defendants' alleged conduct here.  The Complaint fails to allege any racketeering activity that occurred in the United States.  Instead, it alleges that "Defendants and the Government of Canada engaged in a conspiracy to defraud by collectively agreeing to conceal the confiscation of Plaintiff's U.S. passport."  Complaint, ¶ 20.

When that allegation is read with the allegations in paragraphs 6 and 7, it is clear that any alleged wrongdoing occurred in Canada.

In response, Howard argues that defendants' conduct, which materially furthered the unlawful conspiracy in Canada, occurred in the United States. However, even if that argument is supported by any factual allegations in the Complaint, which it is not, it contradicts the applicable legal standard.

Because the Complaint is clear that any alleged racketeering activity occurred in Canada, RICO does not apply. As a result, the RICO claim should be dismissed for failure to state a claim.

B.   **Piercing the Corporate Veil**

The last claim, titled "Piercing the Corporate Veil," alleges that "[t]o the extent that a corporate shell separates [Maximus] from Maximus Canada [Inc.] and [Themis], and any other subsidiaries under which it operates, such corporate formalities should be disregarded. *Id*, ¶ 26. As explained in his response to Maximus's motion, Howard asserts that Maximus management formulated or developed policies that encouraged or allowed an abuse of authority, and that Maximus knowingly recruited individuals willing to break the law to increase profits. However, neither of these allegations is in the Complaint. The Complaint alleges only that Maximus Canada, Inc., engaged in a "lengthy course of conduct and corruption" and that Maximus knew of such corruption.

As a general rule, "veil-piercing claims are governed by the law of the state of corporation whose veil is sought to be pierced." *On Command Video Corp. v. Roti*, 705 F3d 267, 272 (7th Cir 2013) (citations omitted). Because Maximus is a Virginia corporation, the court must look to Virginia law to determine the elements of this claim. Under Virginia law, the

9 – FINDINGS AND RECOMMENDATION

corporate veil may be pierced only when "the unity of interest and ownership is such that the separate personalities of the corporation and [shareholders] no longer exist and to adhere to that separateness would work an injustice." *Dana v. 313 Freemason*, 266 Va 491, 500, 587 SE2d 548, 554 (2003) (citation omitted).  Complete ownership and undue control are not sufficient to pierce the corporate veil under Virginia law.  *Eure v. Norfold Shipbuilding & Drydock Corp., Inc.*, 263 Va 624, 634, 561 SE2d 663, 669 (2002) ("courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other") (citation omitted).

The allegations in the Complaint fail to set forth sufficient facts to state a claim to pierce Maximus's corporate veil.  The Complaint alleges only that: (1) Maximus Canada, Inc., and Themis are wholly owned subsidiaries of Maximus; and (2) Maximus controls the labeling and marketing of its subsidiaries' services.  Complaint, ¶ 26.  It fails to allege any facts that Maximus and its Canadian subsidiaries operated under unified control or identity, such that a lack of separateness caused the alleged harm to Howard.  Thus, this claim should be dismissed.

### III.    Failure to Join a Party Under Rule 19

In the alternative, Maximus seeks dismissal under FRCP 12(b)(7) for failure to join Maximus Canada, Inc., Themis, Platt, and Kitcher as required parties under FRCP 19.  Because all claims should be dismissed, the court need not reach this issue.

Even if it found these absent Canadian residents and entities to be "required" parties and even if Howard properly served them, the court lacks cannot join them due to lack of personal jurisdiction over them.  If parties are "required" under FRCP 19(a) but cannot be joined, then FRCP 19(b) dictates that the action should either proceed in their absence or should be dismissed.

"In determining whether a party is 'necessary' under FRCP 19(a), a court must consider whether 'complete relief' can be accorded among the existing parties, and whether the absent party has a 'legally protected interest' in the subject of the suit." *Shermoen v. United States*, 982 F2d 1312, 1317 (9th Cir 1992) (citation omitted). "If a legally protected interest exists, the court must further determine whether that interest will be impaired or impeded by the suit. Impairment may be minimized if the absent party is adequately represented in the suit." *Id* (citation omitted).

Any liability of Maximus is necessarily predicated on a finding that the absent Canadian parties are liable to Howard. Without a finding of liability on the part of Platt, Kitcher, and Themis, Maximus, as a parent corporation, cannot be held liable. Thus, the absent parties have a legally protected interested in the subject of this case.

While Maximus's interests align with the other defendants in some respects, such interests may diverge if this case proceeded. Maximus would have to make a strategic decision to either defend against all alleged actions or to argue only that the corporate veil cannot be pierced, and that Platt and Kitcher were not acting within the scope of their employment. In the latter event, Maximus's interests would not align with the absent Canadian parties, such that those parties' interests would be inadequately represented.

Thus, allowing this case to proceed would inevitably require determining the liability of parties outside this court's personal jurisdiction and could impair the interests and rights of those parties. Accordingly, this case should be dismissed pursuant to FRCP 12(b)(7).

### **RECOMMENDATION**

Maximus's Motion to Dismiss Pursuant to FRCP 12(b)(1), (b)(6), and (b)(7) (docket #20) should be granted, and this case should be dismissed with prejudice.

///

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, December 09, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**NOTICE**

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  November 20, 2013.

                                                                         s/ Janice M. Stewart
                                                                         Janice M. Stewart
                                                                         United States Magistrate Judge