UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MELVIN J. HOWARD,

        Plaintiff,

    v.

MAXIMUS, INC., d/b/a/ MAXIUMS, CANADA INC., d/b/a/ Themis Program Management & Consulting Ltd.; STEVE KITCHER, in his individual capacity; and JOANNE PLATT, in her individual capacity,

        Defendants.

Case No. 3:13-cv-01111-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Melvin J. Howard ("Howard"), appearing *pro se*, filed this action against defendant Maximus, Inc. ("Maximus"), Maximus Canada Inc. ("Maximus Canada"), and two individuals, Steve Kitcher ("Kitcher") and Joanne Platt ("Platt"). The initial Complaint alleged claims under 42 USC § 1983 for various violations of Howard's civil rights, a claim for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC § 1962, *et seq* ("RICO"), and a claim to pierce Maximus's corporate veil. Maximum filed a motion to dismiss, which this court granted (docket #31), dismissing the § 1983 claims with prejudice and the RICO and piercing the corporate veil claims without prejudice. Howard timely filed a First Amended

1 – FINDINGS AND RECOMMENDATION

Complaint on February 24, 2014 (docket #34), which re-pleads the RICO and piercing the corporate veil claims and adds four new claims.

Maximus has filed a Motion to Dismiss Pursuant Plaintiff's First Amended Complaint pursuant to FRCP 12(b)(6) and (b)(7) (docket #36) for failure to state a claim and failure to join required parties. For the reasons set forth below, that motion should be granted, and this case should be dismissed with prejudice.

## **ALLEGATIONS**

All of Howard's claims arise out of conduct occurring while he was in Canada, including illegal confiscation of his United States passport, arrest and imprisonment without probable cause, failure to treat his medical needs, and other abuses of authority.

Maximus, a Virginia corporation, operates government-sponsored programs in the United States, Australia, Canada, the United Kingdom, and Saudi Arabia. First Amended Complaint, ¶ 2. It was first established in Canada in 2002 by acquiring Themis Program Management & Consulting, Ltd. ("Themis"), which manages and conducts the Province of British Columbia's Family Maintenance Enforcement Program ("FMEP") through the Ministry of Attorney General. *Id*, ¶ 3. Maximus also contracts with the Province of British Columbia to provide management and administration services for both its drug benefit program (PharmaCare) and medical insurance program (Medical Services Plan). *Id*. Maximus is the sole or majority shareholder of Themis and controls the labeling and marketing of its services. *Id*, ¶¶ 3, 24.

The FMEP has a unit comprised of lawyers employed by the British Columbia Attorney General's FMEP and by Themis. *Id*, ¶ 5. Kitcher was the enforcement officer for the Director of FMEP. *Id*, ¶ 6. Platt also works for FMEP. *Id*

2 – FINDINGS AND RECOMMENDATION

As in the initial Complaint, the alleged facts underlying Howard's claims are sketchy and hard to piece together into a coherent narrative. His problems apparently started in 2008 when he filed a NAFTA complaint alleging that the Canadian government had breached its obligations under NAFTA by expropriating his equipment for use in a diagnostic imaging facility. *Id*, ¶ 4. According to that NAFTA complaint, Canada provided better treatment to Canadian investors than to him. *Id.*

In 2009 while residing in Arizona, Howard wrote to the Department of Economic Security Administrative Review Unit of Arizona and expressed his views of prosecutorial misconduct by the FMEP and breach of its reciprocal agreement with Arizona. *Id*, ¶ 5. Sometime before 2012, the FMEP incarcerated Howard in Canada on three separate occasions while visiting his children. *Id*, ¶ 6. While incarcerated, Howard alleges that he was denied adequate medical care. *Id*, ¶ 18. He blames his arrest, imprisonment, and mistreatment on Maximus not properly training and supervising its subordinates in Canada. *Id*, ¶ 16.

In 2012, apparently while in Canada, Howard called the FMEP and spoke with Kitcher who reported FMEP's hold on a joint bank account that Howard used for the benefit of his children. *Id*, ¶ 6. Kitcher also bragged about FMEP compelling Howard to surrender his passport, which Platt later confirmed. *Id.* The confiscation of his passport was an alleged attempt by British Columbia and Maximus to block Howard's travel to The Hague where the international tribunal was to hold a hearing on his NAFTA case. *Id*, ¶ 12. As part of this scheme, defendants "acted individually and together to continue a pattern and practice of abuse and misuse of authority to cover up illegal activity in their office, including destroying evidence, doctoring financial reports to defend their misconduct, suppressing the truthful account of events, . . . falsely testifying at family court proceedings in Canada," and manufactured evidence in

3 – FINDINGS AND RECOMMENDATION

order to justify interfering in his ongoing NAFTA proceedings. *Id*, ¶¶ 14, 17. Branch offices and affiliates of Maximus in the United States and Canada communicated to plan further human rights violations, including mass intimidation campaigns, against Howard. *Id*, ¶ 3.

## FINDINGS

**I.    Legal Standard**

In order to survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations which, when accepted as true, give rise to a plausible inference that defendants violated plaintiff's rights. *Ashcroft v. Iqbal*, 556 US 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 US 554, 556-57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678. In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). Courts must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F3d 338, 341 (9th Cir 2010).

**II.   New Claims (First Through Fourth Causes of Action)**

Although the court permitted Howard to amend "only as to his RICO and Piercing the Corporate Veil claims to attempt to cure the deficiencies set out in the Findings and Recommendations" (docket #31, p. 7), the First Amended Complaint alleges four new claims. Maximus seeks dismissal of these claims because they merely re-cast Howard's § 1983 claims that were previously dismissed with prejudice. Although the factual allegations remain

substantially unchanged, these claims do attempt to allege new legal grounds for relief. Therefore, this court will address them.[1]

Howard's four new claims assert violations of the American Convention on Human Rights (First Cause of Action), the United Nations Convention Against Torture ("CAT") (Second Cause of Action), the Universal Declaration of Human Rights (Third Cause of Action), and the Standard Minimum Rules for the Treatment of Prisoners ("Standard Minimum Rules") (Fourth Cause of Action).[2] None of these documents provides a legal basis for Howard to obtain relief in this court.

Certain sources of international law confer judicially enforceable rights. Despite its moral authority, the Universal Declaration of Human Rights is not one of those sources. Instead, it is merely a "non-binding resolution[] of the General Assembly of the United Nations." *Siderman de Blake v. Republic of Arg.*, 965 F2d 699, 719 (9th Cir 1992) (explaining that the resolution "creates legal obligations only insofar as it represents evidence of customary international law"); *see also Sosa v. Alvarez-Mochin*, 542 US 692, 735 (2004) (it "does not of its own force impose obligations as a matter of international law"). Therefore, it is not enforceable in the federal courts. Similarly, the Standard Minimum Rules only set out "what is generally accepted as being good principle and practice in the treatment of prisoners and the management of institutions." *Serra v. Lappin*, 600 F3d 1191, 1197 (9th Cir 2010), quoting UNITED NATIONS, STANDARD MINIMUM RULES FOR THE TREATMENT OF PRISONERS (1955), *available at*

---

[1] Maximus requests the opportunity to submit supplemental briefing in the event the court considers the merits of Howard's new claims. Since Maximus's short discussion of these claims is sufficient, supplemental briefing is unnecessary.

[2] In paragraph 7, the First Amended Complaint also references the International Covenant on Civil and Political Rights ("ICCPR") Law of Nations, but not as a separate claim. Such a claim would be futile. "[A]lthough the Covenant [ICCPR] does bind the United States as a matter of international law, the United States ratified the Covenant on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts." *Sosa v. Alvarez–Machain*, 542 US 692, 734-35 (2004); *see also Serra v. Lappin*, 600 F3d 1191, 1197 (9th Cir 2010).

5 – FINDINGS AND RECOMMENDATION

http://www.refworld.org/docid/3ae6b36e8.html (last visited May 1, 2014). "It is not a treaty, and it is not binding on the United States." *Id.* Accordingly, the Third and Fourth Causes of Action should be dismissed for failure to state a claim.

The other two new claims allege violations of treaties. Some treaties may be judicially enforced. However, before a treaty can become law, "the Senate, in whom rests the authority to ratify it, must agree to it." *Haver v. Yaker*, 76 US (9 Wall) 32, 35 (1869). Although the American Convention on Human Rights is a treaty, it was never ratified by the Senate. Absent that ratification, this court may not enforce it.[3] Therefore, the First Cause of Action should be dismissed for failure to state a claim.

The other treaty, the United Nations CAT, was ratified by the Senate. However, a ratified treaty is not enforceable in federal court unless Congress has enacted implementing legislation or unless the treaty is self-executing and confers individual rights. The Supreme Court "has long recognized the distinction between treaties that automatically have effect as domestic law, and those that — while they constitute international law commitments — do not by themselves function as binding federal law." *Medellin v. Texas*, 552 US 491, 505 (2008). "[A] treaty is 'equivalent to an act of the legislature,' and hence self-executing, when it 'operates of itself without the aid of any legislative provision.'" *Id* at 491; *see also Cornejo v. County of San Diego*, 504 F3d 853, 856 (9th Cir 2007). If not, a treaty "can only be enforced pursuant to legislation to carry [it] into effect." *Medellin*, 552 US at 505 (citation omitted).

The text of the United Nations CAT specifies that it is not self-executing. *Auguste v. Ridge*, 395 F3d 123, 132 (3rd Cir 2005). To implement the United Nations CAT, Congress

---

[3] Howard references other court decisions binding the United States to unratified treaties. The court cannot locate the cases using the cryptic citations provided and can discern no reason why other courts would make such a finding. Howard is correct that courts "recognize[] customary international human rights norms" (Response (docket #40), p. 13), such as the Universal Declaration of Human Rights, explained above. But recognition is entirely different from enforcement.

6 – FINDINGS AND RECOMMENDATION

passed, in addition to other statutes, the Torture Victim Protections Act of 1991, 29 USC § 1350 ("TVPA"). *United States v. Belfast*, 611 F3d 783, 802 (11th Cir 2010). The TVPA provides a civil tort remedy for victims of torture and appears to be the enacting statute most applicable to Howard's allegations of mistreatment. The TVPA provides that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." 28 USC § 1350, note, § 2(b); *see Hilao v. Estate of Marcos*, 103 F3d 767, 778 (9th Cir 1996).

Howard alleges that as a result of Maximus's "inadequate policy of training enforcement officers," he "was denied his protected rights to liberty and to be free from malicious prosecution." First Amended Complaint, ¶ 16. The alleged violations were carried out by Platt and Kitcher and, therefore, occurred in Canada during Howard's incarceration. Because the First Amended Complaint does not allege that Howard has exhausted his remedies in Canada, this court cannot hear his claim under the United Nations CAT.

Moreover, the TVPA only allows Howard to remedy acts of torture or extrajudicial killing. Under the TVPA:

> the term "torture" means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

28 USCA § 1350, note, § 3(b)(1).

None of the alleged policies, such as employee training and termination practices, authorized killing or "torture" as defined by the TVPA. Thus, even if defendants might have executed such indirect acts in the United States, to which the exhaustion requirement does not

7 – FINDINGS AND RECOMMENDATION

apply, Howard has no cause of action under the TVPA for non-violent civil rights violations. Accordingly, the Second Cause of Action should be dismissed for failure to state a claim.

### III.    RICO (Fifth Cause of Action)

The First Amended Complaint alleges that defendants violated RICO by conspiring to conceal the privatization of Canada's health care system and the confiscation of Howard's U.S. passport from the public, in order to thwart his protest through NAFTA of the undisclosed privatization.  *Id*, ¶¶ 21-22.  To state a claim under RICO, a plaintiff must allege that the defendant:  (1) through the commission of two or more actions constituting a pattern of racketeering activity; (2) directly or indirectly invested in, maintained an interest in, or participated in an enterprise; (3) the activities of which affected interstate or foreign commerce. 18 USC §§ 1961(5), 1962(b).

Despite the addition of factual allegations in the First Amended Complaint addressing all of the RICO elements, the RICO claim nonetheless fails because it is premised only on extraterritorial racketeering activity.  As recently held by the Supreme Court, statutes presumptively do not apply to extraterritorial conduct absent an explicit statement from Congress to the contrary.  *Kiobel v. Royal Dutch Petroleum Co.*, __US__, 133 S Ct 1659, 1669 (2013) (holding that the Alien Tort Statute does not apply to conduct occurring outside of the United States); *Morrison v. Nat'l Austl. Bank, Ltd.*, 561 US 247, __, 130 S Ct 2869, 2883 (2010) (holding that § 10-b of the Securities and Exchange Act of 1934 does not apply to extraterritorial conduct when the security is bought or sold on a foreign market).

Without an explicit statement from Congress to the contrary, RICO applies only to a pattern of racketeering activity that occurs in the United States.  *United States v. Chao Fan Xu*, 706 F3d 965, 975-77 (9th Cir 2013).  Extraterritorial application of RICO does not focus on the

8 – FINDINGS AND RECOMMENDATION

geographic location of the defendant's enterprise, its planning or preparation, but instead focuses on where the pattern of racketeering activity occurred. *Id* at 977-78. In *Chao Fan Xu*, the Ninth Circuit held that RICO did not apply to the defendants' embezzlement of money in China that eventually made its way to the United States, but did apply to their immigration fraud that occurred in the United States. "Defendants' pattern of racketeering activity may have been conceived and planned overseas, but it was executed and perpetuated in the United States." *Id* at 979. Howard alleges the inverse scenario: Maximus conceived and planned its racketeering activity in the United States, but executed it in Canada.

Howard contends that the territorial analysis of RICO focuses on the location of the enterprise, not the location of the activity, citing *In re Le-Nature's, Inc.*, 9-MC-162, 2011 WL 2112533 (WD Pa May 26, 2011). His argument that any claim involving a domestic enterprise falls within range of RICO directly conflicts with *Chao Fan Xu*. *See In re Le-Nature's, Inc*, 2011 WL 2112533, at *3. After citing *In re Le-Nature's* as an example of focusing on the location of the enterprise, the Ninth Circuit chose to join those courts focusing on the location of the racketeering activity. *Chao Fan Xu*, 706 F3d at 975.

The other cases cited by Howard do not support his position because they apply to federal statutes that contain explicit statements of extraterritorial application. *Love v. Assoc. Newspaper*, 611 F3d 601 (9th Cir 2010); *Stansell v. BGP, Inc.*, 09-cv-02501, ECF No. 94 (MD Fla Mar. 31, 2011). For the same reasons, Howard's argument that RICO reaches his claim because the victim was a United States citizen who suffered damages[4] here is equally unpersuasive. The law

---

[4] Howard alleges he suffered the loss of his business, presumably in Arizona, as a result of Maximus's racketeering. Paragraph 7 of the First Amended Complaint cites several cases for the proposition that the presumption against extraterritorial activity does not apply when the racketeering has a substantial effect within the United States. Those cases are not persuasive because they predate *Chao Fan Xu*.

9 – FINDINGS AND RECOMMENDATION

in this circuit is clear: RICO extends only to domestic perpetration of the racketeering activity, regardless of the citizenship of the victims or the location in which the enterprise hatched.

The First Amended Complaint does not clarify which predicate acts, if any, "were carried out in the US with all decision making central to the campaign." First Amended Complaint, ¶ 3. It does mention that Maximus misled the public regarding the nature of Maximus's corporate structure and its relationship to Themis through its website and other advertising materials. *Id*, ¶ 24. In his Response, Howard also mentions Maximus provided "incentives to his continued detention" (docket #40, p. 9), but gives no indication where these actions originated from. Such an allegation clearly does not contain the specificity required by FRCP 9. Under FRCP 9(b), circumstances constituting fraud must be stated with particularity. *Alan Neuman Prods., Inc. v. Albright*, 862 F2d 1388, 1392 (9th Cir 1988). Thus, the Fifth Cause of Action should be dismissed for failure to state a claim.

### IV.    Piercing the Corporate Veil (Seventh Cause of Action)[5]

As a general rule, "veil-piercing claims are governed by the law of the state of corporation whose veil is sought to be pierced." *On Command Video Corp. v. Roti*, 705 F3d 267, 272 (7th Cir 2013) (citations omitted). Because Maximus is a Virginia corporation, the court must look to Virginia law. Under Virginia law, an attempt to pierce the corporate veil is not a stand-alone claim, "rather it is a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation." *C.F. Trust, Inc. v. First Flight Ltd. Part.*, 111 F Supp 2d 734, 743 (ED Va 2000) (applying Virginia law). That point is dispositive. Without a viable RICO or civil rights claim, Howard has no foundation for seeking Maximus's assets by piercing the corporate veil.

---

[5] The First Amended Complaint does not allege a Sixth Cause of Action.

10 – FINDINGS AND RECOMMENDATION

Even if such a claim survived, the First Amended Complaint fails to allege facts sufficient to show Maximus created Themis to shelter its alleged wrongdoing. Under Virginia law, the corporate veil may be pierced only when "the unity of interest and ownership is such that the separate personalities of the corporation and [shareholders] no longer exist and to adhere to that separateness would work an injustice." *Dana v. 313 Freemason*, 266 Va 491, 500, 587 SE2d 548, 554 (2003) (citation omitted). Complete ownership and undue control are not sufficient to pierce the corporate veil under Virginia law. *Eure v. Norfold Shipbuilding & Drydock Corp., Inc.*, 263 Va 624, 634, 561 SE2d 663, 669 (2002) ("courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other") (citation omitted). The newly alleged facts demonstrate only that Maximus exercised almost complete control over Themis. The only allegation that rings of a unified interest is that Maximus misled the public about the nature of its corporate structure and its relationship to Themis through its website and other advertising materials. First Amended Complaint, ¶ 24. Howard does not allege any example of this misrepresentation or how Maximus structured the relationship between itself and Themis to create an alter ego. As argued by Maximus, Howard points to no aspect of its corporate structure that shields it from judicial enforcement beyond the inherent nature of the corporate liability protection.

### V.      Failure to Join a Party Under Rule 19

In the alternative, Maximus again seeks dismissal under FRCP 12(b)(7) for failure to join Maximus Canada, Inc., Themis, Platt, and Kitcher as required parties under FRCP 19. Although Platt and Kitcher are named as defendants, it appears that they were not properly served with the initial Complaint and have not yet been served with the First Amended Complaint. Even if it

11 – FINDINGS AND RECOMMENDATION

these absent Canadian residents and entities are "required" parties and even if Howard properly served them, the court cannot join them due to lack of personal jurisdiction over them.  If parties are "required" under FRCP 19(a) but cannot be joined, then FRCP 19(b) dictates that the action should either proceed in their absence or should be dismissed.

"In determining whether a party is 'necessary' under FRCP 19(a), a court must consider whether 'complete relief' can be accorded among the existing parties, and whether the absent party has a 'legally protected interest' in the subject of the suit."  *Shermoen v. United States*, 982 F2d 1312, 1317 (9th Cir 1992) (citation omitted).  "If a legally protected interest exists, the court must further determine whether that interest will be impaired or impeded by the suit.  Impairment may be minimized if the absent party is adequately represented in the suit."  *Id* (citation omitted).

Any liability of Maximus is necessarily predicated on a finding that the absent Canadian parties are liable to Howard.  Without a finding of liability on the part of Platt, Kitcher, and Themis, Maximus, as a parent corporation, cannot be held liable.  Thus, the absent parties have a legally protected interested in the subject of this case.

While Maximus's interests align with the other defendants in some respects, such interests may diverge if this case proceeded.  Maximus would have to make a strategic decision to either defend against all alleged actions or to argue only that the corporate veil cannot be pierced, and that Platt and Kitcher were not acting within the scope of their employment.  In the latter event, Maximus's interests would not align with the absent Canadian parties, such that those parties' interests would be inadequately represented.

Allowing this case to proceed would inevitably require determining the liability of parties outside this court's personal jurisdiction and could impair the interests and rights of those parties.

Accordingly, even if Howard stated a viable claim, this case should be dismissed pursuant to FRCP 12(b)(7).

## VI.     Dismissal With Prejudice

Before dismissing a *pro se* complaint for failure to state a claim, this court supplies the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi v. L.A. Police Dept.*, 839 F2d 621, 623-24 (9th Cir 1988). A *pro se* litigant will be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Id* at 623; *Lopez v. Smith*, 203 F3d 1122, 1130-31 (9th Cir 2000).

Howard has already been given one opportunity to amend. For the reasons stated above, he has not cured the deficiencies of the initial Complaint and fails to allege any new claims in the First Amended Complaint that may be cured by amendment. Therefore, dismissal should be with prejudice.

## RECOMMENDATION

Maximus's Motion to Dismiss Pursuant Plaintiff's First Amended Complaint (docket #36) should be granted, and a judgment should be entered dismissing this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Friday, May 23, 2014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

///

## NOTICE

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED May 6, 2014.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge